**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY FRAZIER | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-1692** |
| | : | |
| OFFICER CHRISTOPHER LAMINA | | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                 **September 2, 2025**

Federal judges and juries once resolved disputed accounts of verbal and physical interactions between police and citizens during traffic stops when the citizen complained the police used excessive force during the stop and eventual arrest. We often decided these disputes based on credibility of witness testimony. But many officers now wear body cameras recording their interactions with citizens, including on traffic stops. The body camera footage (if not disputed) captures what happened.

Our issues today are informed by several body-worn cameras detailing what happened during a traffic stop in the middle of a weekend night. The question before us is whether the officers' recorded conduct constitutes excessive force in placing handcuffs on the citizen and placing him in a transport van when he would not get into a patrol car. Discovery helps our collective analysis. Several officers' body-worn cameras confirm the events. We find no genuine issue of material fact as to whether the officers placing the citizen in handcuffs or picking him up to put him in the transport van given his resisting conduct towards them is excessive force. We dismiss those claims before trial. But we find a genuine issue of material fact whether an officer who heard the citizen say something through the closed-door transport van had notice of the handcuffs being too tight rising to the level of a constitutional violation. We proceed to trial on the

claim one officer may have had notice of the excessive force with the too-tight handcuffs and failed to intervene before the officers left for the station.

## I.  Undisputed facts and facts otherwise confirmed on Officers' body-worn cameras.

Philadelphian Anthony Frazier drove his van home from visiting a friend in the early morning hours of Saturday, April 22, 2023.[1] Philadelphia Police Officers Devlin and Swart watched him drive through a stop sign.[2] Officers Devlin and Swart lawfully stopped Mr. Frazier's van. Officer Devlin approached him along the drivers' side.

### *The Officers' interactions with Mr. Frazier in his van and street.*

Mr. Frazier hesitated to answer Officer Devlin's questions after he rolled down the driver's side window; he appeared to be talking to someone on his Apple Watch. Officer Devlin told him he did not stop at a stop sign. Mr. Frazier responded, "no way I didn't stop at a stop sign." He continued eating a sandwich and fries while Officer Devlin asked him for a driver's license. Officer Devlin asked Mr. Frazier to hold off on dinner and answer his questions about his van registration and license. Mr. Frazier did not first give his name and wanted instead to find his documents in the van. He told Officer Devlin he did not carry identification. Officer Devlin told him he needed to carry identification while driving and Mr. Frazier responded it is "not a law to carry ID" when driving. Mr. Frazier became argumentative. He repeated asking, "what you pull me over for?" Mr. Frazier eventually gave his name, but not his date of birth. He told Officer Devlin, "feeling like you picking on me now."

Officer Devlin asked him to step outside of the van so the officers would not be standing in the middle of the street. Mr. Frazier argued, "you can't order to step out." Officer Devlin told him he could as an officer safety issue. Mr. Frazier then stepped outside the van. He told Officer Devlin (whom he met moments ago), "what is your thing with me?" and you are all "bullshit."

Officer Devlin asked why Mr. Frazier would not provide his birthdate. Mr. Frazier responded, "all this killing going on and this is bullshit." Mr. Frazier would not give his birthdate and told Officer Devlin to do his job. Officer Devlin asked for, and then (after Mr. Frazier refused) took, Mr. Frazier's wallet to confirm identification. He found the identification in Mr. Frazier's pocket contrary to Mr. Frazier's statement moments ago in the van.

Officers Devlin and Swart noticed alcohol on Mr. Frazier's breath. Officer Devlin asked Mr. Frazier to get into the back of his patrol car to figure all this out. He asked Mr. Frazier, "how much you had to drink?" Mr. Frazier refused to answer telling Officer Devlin to "make up your mind, man … you can't stop a murder but you picking on me." Mr. Frazier asked if the Officer arrested him. Officer Devlin said the officers were detaining him. Mr. Frazier responded, "I choose to be detained outside … [and] do not have to get in the car …. You cannot detain me in the car." Officer Devlin then offered to have Mr. Frazier sit on the curb and to help Mr. Frazier sit down. Mr. Frazier demanded Officer Devlin, "treat me like a civilian" and called the Officer Devlin's conduct "bullshit."

Officer Devlin then checked Mr. Frazier's identification. He discovered Mr. Frazier drove this early weekend morning on a suspended license due to earlier offenses for driving while intoxicated. Mr. Frazier aggressively responded the suspended license is "due to COVID." Officer Devlin then looked back inside the van and saw an open Heineken beer. He told Mr. Frazier. Mr. Frazier angrily responded, "this mother fucker is crazy, man." Officer Devlin told Mr. Frazier to just tell him the truth and the officer would rather get him a ride home without further issues.[3] Mr. Frazier again angrily responded to "get the criminals, I am not no criminal" and he worked at Children's Hospital for five years and Officer Devlin "want to fuck up my whole career." Officer

Devlin after hearing no answer or cooperation then arrested Mr. Frazier for driving under the influence.[4]

Officer Devlin put Mr. Frazier in handcuffs and attempted to place Mr. Frazier in the back of his (and Officer Swart's) patrol car. Mr. Frazier would not get into the back seat. He resisted and continued talking over the officers. Officer Devlin asked for Mr. Frazier's phone through his Apple Watch. Mr. Frazier refused telling the officers, "you cannot take my phone." Officer Devlin requested a police transport van. The officers continued to try and secure the Apple Watch phone then apparently on an open phone line. Mr. Frazier previewed his current claim, "you going to make this a whole situation; what are you looking for; you cannot take my phone, and you [the other officers] are letting him do it." The officers got the Apple Watch off his wrist. Mr. Frazier told the officers to "call backup," "you are acting like a fool," and "you all doing it to me, you picking on me."

### *Officers put Mr. Frazier in the back of the patrol wagon.*

Officers Lamaina and Powell arrived on the scene with a transport van to pick up Mr. Frazier.[5] Officers Devlin, Swart, Lamaina, and Powell walked Mr. Frazier to the back of the van. They opened the door. Mr. Frazier angrily said, "you fucking my whole life; I get a DUI my life is over" and "we are going to see about this."

Mr. Frazier would not get into the back of the van. He told the officers to "earn it" and asked for civilians to record the officers' conduct. Mr. Frazier put his large feet up against the back bumper to block being lifted into the van feet first.[6] He pushed against the back bumper. The officers asked him to turn around so they could put him in the van to be seated. He responded, "you turn me around, get the fuck out of here." Mr. Frazier is 6'7" tall and weighed approximately 260 pounds at the time of his arrest. Mr. Frazier would not voluntarily step up into the transport

van and can be seen on Officer Devlin's and Officer Wilkins's body camera footage putting his feet against the bumper of the van preventing his entry into the van.[7] Mr. Frazier concedes he put his feet on the bumper of the van to avoid being forced into the back of the van.[8] He also concedes he told the Officers to "earn it" while putting his feet on the bumper in an attempt to impede placement in the back of the transport van.[9] But he argues he complied with the Officers by walking to the back of the transport van but "then hesitated" getting into the back of the van because he "wanted to continue discussing the situation with the officers and because he believed that he was too tall to get into the back of the wagon without assistance due to the way his body was positioned as the officers were guiding him towards the open back doors."[10] The four officers ultimately succeeded in putting Mr. Frazier in the back of the van on his side.[11]

### *Mr. Frazier complained twice about the tightness of his handcuffs while in the transport van.*

Mr. Frazier did not complain to Officer Devlin about the tightness of or pain from the handcuffs at any time.[12] After placement in the transport van, and with the van doors closed for a few minutes, Mr. Frazier said aloud, "these cuffs are too tight, man."[13] Officer Lamaina, standing outside the closed door transport van replied, "huh?" to which Mr. Frazier replied, "these cuffs too tight," and Officer Lamaina replied, "I can't hear you."[14]

Mr. Frazier concedes these are the only comments he made about the tightness of the handcuffs.[15] Mr. Frazier concedes he "did not further request assistance with the handcuffs because [Officer] Lamaina could hear [Mr. Frazier] and had apparently chosen to ignore his plea for assistance."[16] Mr. Frazier swore after making the two "these cuffs are too tight" comments, he understood "they heard me, they didn't act on it, so it was like a waste of breath at that point."[17] Mr. Frazier swore no one else was in the back of the transport van with him when he made the comments, he could not see officers at that point, but could hear officers.[18]

Mr. Frazier made these comments about the handcuffs outside the presence of Officers Devlin and Swart then in their patrol car preparing the arrest paperwork.[19] Officer Lamaina's body camera footage shows Officer Devlin went back to the transport van less than five minutes after Mr. Frazier complained about the tightness of handcuffs.[20] Officer Devlin opened the back doors of the transport van to speak with Mr. Frazier who then said nothing about the tightness of his handcuffs.[21]

Officers Lamaina and Powell transported Mr. Frazier to the Police Detention Unit.[22] Mr. Frazier did not complain about the tightness of or pain from the handcuffs on arrival at the Police Detention Unit.[23]

### Mr. Frazier seeks medical treatment for injury to his wrist.

Mr. Frazier sought medical treatment from his primary care physician for injuries to his right wrist within a week of arrest.[24] The primary care physician referred Mr. Frazier to an orthopedist who treated Mr. Frazier for nearly two years, including testing and treatment, two surgeries, and hand therapy.[25] Treatment did not improve Mr. Frazier's symptoms and he has reached maximum medical improvement.[26]

### Mr. Frazier sued the City and Officers.

Mr. Frazier sued the City of Philadelphia, seven Philadelphia Police Officers, and a Sergeant under section 1983 for excessive force in placing him in unnecessarily tight handcuffs and "violently throwing him in the back of" the transport van, failure to intervene, and a *Monell* claim against the City.[27] The parties agreed to dismiss the City, Officers Anderson and Godfrey, and Sergeant Saxton.[28] Mr. Frazier is proceeding on his pleaded two excessive force claims against Officers Devlin, Swart, Powell, Lamaina, and Wilkins based on (1) unnecessarily tight handcuffs; and (2) throwing him in the back of the transport van. He alleges a failure to intervene claim against

Officers Devlin, Swart, Powell, Lamaina, and Wilkins based on the alleged unnecessarily tight handcuffs.[29]

## II. Analysis

The Officers move for summary judgment on the three remaining pleaded claims.[30] Mr. Frazier narrowed his excessive force handcuffing claim to Officers Devlin and Swart and narrowed his failure to intervene claim on the handcuffing to Officers Swart and Lamaina.[31] Mr. Frazier continues to maintain an excessive force claim relating to placing him in the transport van against all five Officers and a failure to intervene on placement in the transport van against all five Officers even though he did not plead such a claim and we cannot craft such a claim when not pleaded after three attempts.

### A. We grant the Officers judgment on the excessive force handcuffing claim and failure to intervene on the handcuffing claim except for genuine issues of material fact relating to Officer Lamaina's potential liability for not intervening as to the allegedly tight handcuffs.

Mr. Frazier sues Officers Devlin and Swart for excessive force in placing the handcuffs on him at time of arrest before trying to place him in their patrol car. Mr. Frazier also sues Officers Swart and Lamaina for failing to intervene and stop the excessive force with the handcuffs particularly after Mr. Frazier said "the cuffs are too tight" two times in the closed-door transport van and never again. Discovery, particularly the officer body-worn cameras, confirms no genuine issues of material fact as to excessive force in first placing the handcuffs on Mr. Frazier. But the camera also confirms a genuine issue of material fact whether Officer Lamaina's response of not hearing Mr. Frazier say the cuffs are too tight when the statement is audible on the body-worn camera requires a jury evaluation of whether Officer Lamaina can be liable for excessive force depriving Mr. Frazier of a constitutional right.

The Fourth Amendment guarantees the right of citizens to be free from the use of excessive force.[32] To prevail on an excessive force claim, Mr. Frazier must show a seizure and the seizure is unreasonable under the circumstances.[33] The parties agree Mr. Frazier's arrest constituted a seizure, so we consider only whether Officers Devlin and Swart used reasonable force in handcuffing Mr. Frazier.[34]

We consider whether a police officer's actions are objectively reasonable in light of the facts and circumstances confronting him or her without regard to his or her underlying intent or motivation.[35] We are directed by the Supreme Court to assess reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[36] Our assessment of reasonableness is informed by factors including the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by fleeing, the physical injury to the plaintiff, the possibility persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility the suspect may be armed, and the number of persons with whom the police officers must contend at one time.[37] While reasonableness is generally a question for the jury, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."[38]

### 1. Mr. Frazier does not adduce fact issues on Officer Devlin's and Officer Swart's notice of Mr. Frazier's pain.

We first evaluate whether Officers Devlin and Swart can be liable for excessive force in placing Mr. Frazier in handcuffs before trying to move him into a patrol car and eventually into the back of a transport van. Our Court of Appeals instructs police officers are not liable in excessive force handcuffing claims "unless they are notified of an arrestee's pain."[39]

Mr. Frazier largely looks past the Officers' notice of pain or discomfort. He instead argues, essentially as a matter of law, an officer can be liable in excessive force anytime she does not double-lock the handcuffs regardless of whether the officer knows of how the handcuffs affect the person arrested. Mr. Frazier contends Officer Devlin did not double-lock the handcuffs.[40] Mr. Frazier cites Officer Swart's body camera footage as showing neither she nor Officer Devlin double-locked or checked the handcuffs and the footage shows the handcuffs "are obviously digging into his skin."[41]

Officer Devlin swears he does not know whether he double-locked Mr. Frazier's handcuffs, swore he cannot determine from review of his body camera footage whether he double-locked the handcuffs, and swore he does not recall whether he visually checked Mr. Frazier's handcuffs, whether he saw a gap between the cuffs and Mr. Frazier's wrists, or whether he placed a finger between the handcuffs and wrists to check for tightness.[42]

Disputed facts relating to double-locked handcuffs are material should an officer have notice. We do not get there after being guided by a trio of cases from our Court of Appeals addressing excessive force handcuffing claims reminding us of the test on whether the officer has notice of pain.

First, in *Kopec v. Tate*, our Court of Appeals reversed summary judgment over twenty-years ago in favor of a police officer in an excessive force handcuffing case.[43] Officer Tate handcuffed Mr. Kopec on arrest. Mr. Kopec complained to Officer Tate of unbearable pain and "begged" Officer Tate to loosen the handcuffs.[44] Officer Tate did not respond. Mr. Kopec again told Officer Tate of pain and "begged" the officer to loosen the handcuffs. The officer again did not respond. Mr. Kopec began to faint from the pain caused by the handcuffs and fell to the ground, again asking Officer Tate to remove the handcuffs because he lost feeling in one of his hands.

Officer Tate did not immediately respond and Mr. Kopec again, groaning in excruciating pain, asked Officer Tate to loosen or remove the handcuffs which Officer Tate ignored. Mr. Kopec remained in handcuffs for about ten minutes until Officer Tate loosened them, causing permanent nerve damage.[45] Mr. Kopec made repeated comments about the pain of handcuffing, at one point falling to the ground in pain. Our Court of Appeals concluded these facts, if credited, would establish excessive use of force by Officer Tate.[46] But our Court of Appeals cautioned its guidance should not be overread because it did not intend to "open the floodgates to a torrent of handcuff claims."[47]

Our Court of Appeals returned to this issue a year later in *Gilles v. Davis* when affirming summary judgment in favor of a police officer.[48] Sergeant Davis handcuffed Mr. Gilles on arrest at a university protest. Mr. Gilles claimed excessive force based on the tightness of his handcuffs, arguing his loud singing to take his mind off the pain and a complaint of pain made to unidentified officers who allegedly relayed the complaint to Sergeant Davis should have alerted Sergeant Davis to Mr. Gilles's pain.[49] Our Court of Appeals rejected Mr. Gilles's claim, distinguishing him from the arrestee in *Kopec*, concluding it is not objectively reasonable to deduce from Mr. Gilles's singing the handcuffs caused him pain, the footage of the arrest did not show "obvious visible indicators" of pain (other than his complaint the handcuffs were too tight) and did not show Mr. Gilles demonstrated an expression or sign of discomfort, and Mr. Gilles did not seek or receive medical treatment.[50] The court concluded insufficient evidence as a matter of law to support an excessive force by handcuffing claim.

And five years ago in *Williams v. City of York*, our Court of Appeals concluded the arrestee could not show her officers received notice of her pain and the court warned us about overreading their 2004 guidance in *Kopec*.[51] Ms. Williams sued three officers for excessive force in

handcuffing her during an arrest for disorderly conduct. Ms. Williams contended she complained to officers about pain from her handcuffs but dashcam footage showed Ms. Williams did not complain about pain from her handcuffs.[52] The court concluded insufficient evidence for a reasonable jury to conclude officers received notice of Ms. Williams's pain.

Our takeaway from *Kopec*, *Gilles*, and *Williams* is officers cannot be liable in excessive force handcuffing claims unless they are notified of an arrestee's pain. There is no dispute neither Officer Devlin nor Officer Swart were near the transport van at the time Mr. Frazier later said "these cuffs are too tight" in the closed door transport van; the body camera footage shows both Officer Devlin and Officer Swart were in their patrol car at the time Mr. Frazier made these statements and did not hear it.

Mr. Frazier argues notice is not strictly required and is simply a "factor" and not a "bright line rule" in excessive force handcuffing claims, citing *Fry v. Smoker*, a 2012 decision after *Kopec* and *Gilles* but before *Williams*.[53] We are not persuaded. In *Fry*, Officer Smoker stopped Mr. Fry for a traffic violation. Officer Smoker observed signs of intoxication, administered a field sobriety test which Mr. Fry failed, and arrested Mr. Fry for driving under the influence of alcohol. Officer Smoker handcuffed Mr. Fry and put him in the back of his police car to transport him to the hospital. During the five to six minute ride to the hospital, Mr. Fry never complained to Officer Smoker about the tightness of the handcuffs. The day after his arrest, Mr. Fry sought medical treatment for pain in his right wrist and thumb.

Mr. Fry sued Officer Smoker for excessive force in handcuffing. Officer Smoker argued the excessive force claim failed because Mr. Fry did not complain about the tightness of the handcuffs. Judge Schiller disagreed, concluding neither *Kopec* nor *Gilles* required an arrestee to complain about overly tight handcuffs to establish an excessive force claim, and is simply one

factor the jury may consider in determining whether Officer Smoker used excessive force in handcuffing Mr. Fry.[54] Judge Schiller also reasoned Mr. Fry's failure to complain about the tightness of the handcuffs is not dispositive because Officer Smoker, like the facts in *Kopec*, faced "benign circumstances" of simply transporting a suspected drunk driver to the hospital for a blood test which is neither urgent nor dangerous requiring "skipping the step" of visually inspecting the handcuffs for space before double-locking them and Mr. Fry produced evidence of serious injuries requiring medical treatment with an expert report linking his injuries to overly tight handcuffs.[55] Judge Schiller concluded Mr. Fry's case is more like *Kopec* than *Gilles* and found Mr. Fry presented sufficient evidence for a reasonable jury to find Officer Smoker's use of handcuffs constituted excessive force.

We disagree Judge Schiller's reasoning in *Fry* applies to Mr. Frazier's well-documented conduct. First, Judge Schiller did not have the benefit of our Court of Appeals's 2020 *Williams* guidance cabining *Kopec* to its facts and recognizing "[w]e have declined to hold officers liable [in handcuffing cases] unless they are notified of an arrestee's pain."[56] Second, the arrestee in *Kopec* complained about pain and exhibited pain in a way creating an issue of material fact. We have no such complaints here. Third, we cannot locate a case applying *Fry* for the proposition an arrestee need not complain about pain to survive a motion for summary judgment.

Mr. Frazier contends he did not have to complain about his pain to Officers Devlin and Swart because other circumstances put them on notice of his pain from tight handcuffs: (1) Officers Devlin's and Swart's body camera footage "clearly" shows the handcuffs digging into Mr. Frazier's skin "as soon as they are put on;" and (2) Officers Devlin's and Swart's training on the use of handcuffs, including double-locking and an arrestee sitting on cuffs. We conclude Officers Devlin's and Swart's body camera footage and their training generally did not put them on notice

of pain or physical distress. Mr. Frazier concedes he never complained about tightness of handcuffs or pain from the handcuffs to either Officer Devlin or Officer Swart. Yet he asks us to find this evidence precludes summary judgment on excessive force by imputing his version of the body camera footage and the Officers' general training as creating a genuine issue of fact as to whether the Officers had notice of his pain. This is not like the facts in *Kopec* where Mr. Kopec repeatedly complained about pain and fell to the ground in a near faint from the pain, "obvious visual indicators" of pain.[57] The facts here are much closer to *Gilles* and *Williams.*

We grant summary judgment in favor of Officers Devlin and Swart on the excessive force handcuffing claim.

### 2. Fact issues preclude summary judgment on a failure to intervene claim in handcuffing against Officer Lamaina only.

Mr. Frazier claims Officer Lamaina and Officer Swart can be liable for failing to intervene as to the "too-tight" handcuffs.[58] We grant judgment in favor of Officer Swart on the failure to intervene claim against Officer Swart for the reasons explained in the direct claim against her. But we conclude there are genuine issues of material fact as to Officer Lamaina's alleged failure to intervene.

Mr. Frazier must show (1) a constitutional violation took place in Officer Lamaina's presence; and (2) Officer Lamaina had "a realistic and reasonable opportunity to intervene."[59] There is no dispute Mr. Frazier said, "these cuffs are too tight, man" while alone in the back of the transport van, Officer Lamaina replied, "huh?" Mr. Frazier again said, "these cuffs too tight" to which Officer Lamaina replied, "I can't hear you." There is no dispute Officer Lamaina's body camera footage recorded the exchange.

Officer Lamaina argues the comment "these cuffs are too tight," without more, is insufficient notice of a constitutional violation as a matter of law. Officer Lamaina cites *Williams,*

which relied on *Gilles*, for the proposition an arrestee's "mere 'complain[t] of pain to unidentified officers who allegedly passed the information" on to the handcuffing officers is insufficient to prevail on an excessive force claim.[60] But that is not what happened here; we do not have statements made to unidentified officers. Mr. Frazier made a statement about his handcuffs being too tight, Officer Lamaina responded ("Huh?") and Mr. Frazier repeated his comment about the tightness of the cuffs, to which Officer Lamaina responded he could not hear. He heard something but did not follow up. Officer Lamaina points out Mr. Frazier did not make a comments about pain from the handcuffs when Officer Devlin opened the back doors of the transport van only minutes after the handcuffs are too tight statements. But these are fact arguments going to whether Officer Lamaina heard Mr. Frazier's complaints the handcuffs were too tight creating a possible constitutional violation in Officer Lamaina's presence and whether Officer Lamaina had a realistic and reasonable opportunity to intervene. We deny summary judgment on the failure to intervene on excessive force handcuffs claim only as to Officer Lamaina only.

Mr. Frazier raises a failure to intervene claim against all five Officers on the forcible placement in the back of the transport van. This failure to intervene claim is not pleaded in the second amended Complaint. Mr. Frazier may not amend his second amended Complaint in response to the pending Motion for summary judgment.[61] We dismiss failure to intervene claims based on the placement in the transport van against all Officers.

### B.    We grant judgment for the Officers for conduct placing Mr. Frazier in the transport van.

Mr. Frazier, without supporting facts, pleaded as a matter of law Officers Devlin, Swart, Powell, and Lamaina "violently [threw] him in the rear of the patrol wagon" "to transport [Mr. Frazier" to police headquarters.[62] He pleads no further facts about this incident after three attempts to plead. He does not plead, for example, the placement in the patrol wagon harmed him.[63] He

does not plead a fact about seatbelts in the wagon or harm arising from Mr. Frazier not being secured by harnesses in the wagon.[64]

The five Officers now seek summary judgment arguing their conduct placing him in the rear of the patrol wagon is not, as a matter of law, excessive force. Mr. Frazier attempts to add facts through briefing claiming the Officers did not need to place him in the transport van because he did not actively resist arrest, the Officers acted impatiently, and Mr. Frazier did not pose a threat.[65] The undisputed bodycam footage confirms no reasonable jury could find the Officers exerted excessive force in placing Mr. Frazier in the back of the police wagon.

We are guided by several factors in determining whether the Officers objectively applied excessive force. Our Court of Appeals's analysis is a good place to start.[66] The court in *Thomas* affirmed Judge Cohill's grant of summary judgment dismissing an excessive force claim when placing an intoxicated arrested person in a police van.[67] Our Court of Appeals reminded us the excessive force claim is premised on the concept of police using more force than necessary to arrest.[68] And our summary judgment analysis revolves around whether an officer's use of force is objectively reasonable under all the circumstances.[69] We must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[70]And the Supreme Court reminds us "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, … violates the Fourth Amendment."[71]

Our Court of Appeals, applying these principles, affirmed Judge Cohill's grant of summary judgment dismissing an excessive force claim in facts similar to Mr. Frazier's conduct. Mr. Thomas admitted (although not on a bodycam like we have today) of going "limp" on the ground

with his hands underneath him when officers tried to arrest him. Officers hit Mr. Thomas's head against the door while placing him in the police wagon. And Mr. Thomas, like Mr. Frazier, could not plead some injury arising from how the officers placed him in the police wagon. Our Court of Appeals further noted Mr. Thomas could not adduce evidence the officers intentionally hit his head into the police wagon.

We are also guided by Judge Hillman's grant of summary judgment for officers even after he, like us today, construed fact disputes in Mr. Frazier's favor. In *Shoffler*, officers approached the naked Mr. Shoffler to advise he could not swim naked after "a couple beers" and he responded, "fuck you cops" among other obscenities.[72] The police gave him a warning. He ceased for a bit. Then he returned to swimming naked. One officer returned to arrest Mr. Shoffler for public disorder. Mr. Schoffler pulled away and resisted arrest by tightening his arms in response to efforts to handcuff him.[73] The officer then took down Mr. Schoffler to the ground to effect an arrest, they exchanged words during the arrest, the officer directed Mr. Schoffler to "hold still," and Mr. Schoffler (like Mr. Frazier) was much larger than the officer.[74] Mr. Schoffler disregarded earlier warnings. He could not show injuries from being taken to the ground as opposed to other claims including through handcuffs and being forced to twist uncomfortably while riding handcuffed in the police vehicle.[75] Judge Hillman, noting deference (on a summary judgment standard) to an arrestee's theories in an excessive force case, found the officer's use of force in taking the larger Mr. Shoffler to the ground to be objectively reasonable.[76]

Judge Wolfson also dismissed excessive force claims on summary judgment presented by a person charged with shouting obscenities in a public space and not producing identification to the officer. In *Murphy*, Mr. Murphy ignored an officer's direction to stop walking away; Mr. Murphy screamed and repeatedly shoved his finger into the officer's face.[77] Officers followed him

into his father's backyard where he tried to enter the residence. The officers told Mr. Murphy of his arrest. Mr. Murphy did not comply with officers' direction. The officers had no evidence of Mr. Murphy possessing a gun but thought he may pose a threat given his violent demeanor. The officers arrested him in less than a minute by taking him to the ground. Judge Wolfson found no basis to proceed to a jury on this excessive force claim.

We again benefit from the unchallenged bodycam footage undisputably showing the entire process of moving Mr. Frazier from the police car to the street, and eventually into the back of the transport van. One or more of the Officers moved him to the police car. They asked him to take off his Apple Watch as Mr. Frazier called a person through his Apple Watch. Mr. Frazier told the Officers they could not take his Apple Watch phone. He resisted their efforts to shut down his phone call while under arrest. The undisputed video and audio footage then confirm the Officers acted to move the 6'7" arrested and allegedly intoxicated Mr. Frazier into the transport van after he vigorously resisted arrest. Mr. Frazier slurs words while contesting an arrest. The transport van arrives. Mr. Frazier tells the Officers a DUI charge will mess up his life. The Officers walk Mr. Frazier over to the back of the transport van. He is visibly much larger than the Officers. He will not move into the back of the transport van. The Officers open the back of the van. He places his feet (through readily apparent green sneakers) upon against the bumper twice telling the Officers to "get the fuck out of here" and "earn it." He will not go into the back of the transport van. Officers pick up each leg and arm and attempt to place him in the back feet first. He resists. The Officers then turn him around, pick him up by his legs and shoulders, and place him in the back of the van on his side. He does not complain of pain caused by placing him in the back of the van on his side. He promptly moves into a seated position. Moments later the bodycam records him sitting up with his legs up the wall. There is no objective basis to find the physical moving into the transport van

is gratuitous force or evinces some intent to harm him.[78] Mr. Frazier would not move; he would not cooperate in getting into the patrol car earlier or the transport van later. He instead directed the Officers to "earn it."

We appreciate driving while intoxicated on a dark early weekend morning along with a traffic stop is not the most serious crime to many persons. He, like those engaged in naked swimming or yelling obscenities in public, did not engage in fatally dangerous conduct (although we do not diminish the risk of drunk driving on a suspended license let alone with open containers and firearms). But Mr. Frazier had a different view. He told the Officers a "DUI" would destroy his career. We also have no basis to believe Mr. Frazier intended to physically harm the Officers although the Officers later found a firearm in his vehicle along with an open container of Heineken beer. Mr. Frazier is much larger than the Officers. The undisputed body-worn camera confirms he acted obstinate, aggressive, belligerent, and challenged the Officers time and time again when they tried to diffuse his threats. He actively resisted arrest. He became physically violent and then dared the Officers to "earn it." They then picked him up with one Officer on each leg and shoulder. They needed four Officers to move a man of Mr. Frazier's size. And his uncooperative belligerent conduct towards the Officers required they use the necessary force to calm him down and move him off the street.

## III.  Conclusion

Officers' body-worn cameras again offer compelling evidence of what happened in an encounter leading to an arrest in the middle of a weekend night on a Philadelphia street. We find no genuine issue of material fact as to the excessive force claim against Officers Devlin and Swart for placing Mr. Frazier in handcuffs. We also find no genuine issue of material fact as to excessive force in placing Mr. Frazier in the back of the transport van. But Officer Lamaina's responses of

"huh" and "I can't hear you" could be fairly challenged by the audio on body-worn camera requiring our jury to decide the genuine issue of material fact as to whether Officer Lamaina had notice of the "too-tight" handcuffs and chose to not intervene at a level violative of Mr. Frazier's constitutional rights. We grant the Officers' motion for summary judgment in part but will proceed on the failure to intervene claim against Officer Lamaina only relating to the "too-tight" handcuffs.

---

[1] ECF 35-1, Statement of Undisputed Material Fact ¶ 5. Our Policies require parties moving for judgment under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts and an appendix to support summary judgment. Defendant Philadelphia Police Officers Sean Devlin, Gabrielle Swart, Ryan Powell, Christopher Lamina, and Wilkins filed a Motion for summary judgment, Memorandum in support of summary judgment, Statement of Undisputed Material Facts ("SUMF"), and Joint Appendix (J.A.) at ECF 35, 35-1, and 35-2. Mr. Frazier responded to the Motion for summary judgment, responded to the Officers' SUMF and added a SUMF, and additional documents to supplement the Joint Appendix at ECF 38, 38-1, 38-2, 38-3.

[2] ECF 35-1 ¶ 6; ECF 35-2, J.A. 2.

[3] Officer Devlin also found a loaded handgun in the van.

[4] ECF 35-1 ¶¶ 7, 11. The Arrest Report shows charges for a violation of Pennsylvania's Unform Firearms Act, driving under the influence of alcohol, driving with a suspended license, alcohol in a motor vehicle, and failure to carry his driver's license. ECF 35-2, J.A. 3.

[5] ECF 35-1 ¶ 12.

[6] ECF 38-2, Response to SUMF ¶¶ 13, 15.

[7] *Id.*

[8] *Id.*, Response to SUMF ¶ 15.

[9] *Id.*, Additional SUMF ¶ 29.

[10] *Id.*, Response to SUMF ¶ 13.

[11] ECF 35-1, SUMF ¶ 16. Mr. Frazier denies the Officers put him directly on his side, citing Officer Devlin's body camera footage showing Mr. Frazier being put on his back and then rolling over onto his side. ECF 38-2, response to SUMF ¶ 16.

[12] ECF 35-1, SUMF ¶ 20; ECF 38-2, Response to SUMF ¶ 20.

[13] ECF 35-1, SUMF ¶ 17; ECF 38-2 Response to SUMF ¶ 17.

---

[14] ECF 35-1, SUMF ¶ 17.

[15] ECF 38-2, Response to SUMF ¶ 17.

[16] *Id.*

[17] ECF 35-2, J.A. at 57, Frazier N.T. at 40-41.

[18] *Id.*, Frazier N.T. at 41.

[19] ECF 35-1, SUMF ¶ 18; ECF 38-2, Response to SUMF ¶ 18.

[20] ECF 35-1, SUMF ¶ 19, ECF 38-2, Response to SUMF ¶ 19.

[21] ECF 35-1, SUMF ¶ 22; ECF 38-2, Response to SUMF ¶ 20.

[22] ECF 35-1, SUMF ¶ 23; ECF 38-2, Response to SUMF ¶ 23.

[23] *Id.*

[24] ECF 38-2, Additional SUMF ¶ 32.

[25] *Id.*, Additional SUMF ¶¶ 33-34.

[26] *Id.*, Additional SUMF ¶¶ 33-34.

[27] ECF 28 ¶ 38. Mr. Frazier asserted a municipal liability claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[28] ECF 32, 33.

[29] Mr. Frazier brings his claims under 42 U.S.C. § 1983. Congress through section 1983 provides a remedy for a violation of constitutional rights but it is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Congress through section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

Mr. Frazier's *Monell* claim is no longer at issue following the City's dismissal from the case.

[30] Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a

material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party does not prevent summary judgment. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When determining whether a disputed fact is genuine, we draw all inferences in favor of the non-moving party. *Id*. We do not weigh evidence or make credibility determinations. *Spivack v. City of Phila.*, 109 F.4th 158, 165-66 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)).The Supreme Court "outlined two closely related methods for a movant to succeed at summary judgment": (1) under the "standard approach," the moving party may produce material facts, genuinely undisputed, entitling it to judgment as a matter of law; and (2) under the "*Celotex* approach," the moving party "may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial*." *Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment is appropriate where the nonmoving party does not make a showing sufficient to establish the existence of an element essential to its case and on which it bears the burden of proof at trial. *SodexoMAGIC*, 24 F.4th at 204 (citing *Celotex Corp*., 477 U.S. at 322).

[31] Summary judgment is entered in favor of Officers Devlin, Swart, Powell, Lamaina, and Wilkins on the excessive force handcuffing claim and in favor of Officers Devlin, Swart, Powell, and Wilkins on the failure to intervene on handcuffing.

[32] *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

[33] *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (citation omitted).

[34] We again note Mr. Frazier asserts an excessive force claim based on unnecessarily tight handcuffs against Officers Devlin, Swart, Powell, Lamaina, and Wilkins. ECF 28 ¶ 38. But in response to the Officers' Motion for summary judgment, Mr. Frazier argues there is a genuine dispute of material fact as to whether Officers Devlin and Swart used reasonable force in handcuffing him. *See* ECF 38 at 5. Mr. Frazier abandoned his excessive force handcuffing claims against Officers Powell, Lamaina, and Wilkins.

[35] *Anglemeyer*, 92 F.4th at 188 (quoting *Graham*, 490 U.S. at 397).

[36] *Id.* (quoting *Graham*, 490 U.S. at 396).

[37] *Id.* at 188-89 (first quoting *Graham*, 490 U.S. at 397; then quoting *El*, 975 F.3d at 336).

[38] *Estate of Smith v. Marasco*, 318 F.3d 497, 516 (3d Cir. 2003) (citation omitted).

[39] *Williams v. City of York*, 967 F.3d 252, 260 (3d Cir. 2020).

[40] ECF 35-2, J.A. 78, Joint Stipulations Re: body-worn camera footage and Defendants' depositions ¶ 11; ECF 38-2, Response to SUMF ¶¶ 8–10.

[41] ECF 38-2, Response to SUMF ¶ 10. Mr. Frazier also cites the report of his expert witness Dr. Peters who concluded as a matter of fact the handcuffs were not double-locked after his review of body camera footage and police reports. *Id.* The parties agree "double-locking" of handcuffs is a mechanism triggered by an officer to prevent handcuffs from becoming tighter around an arrestee's wrists. ECF 35-2, J.A. 78, Joint Stipulations Re: body-worn camera footage and Defendants' depositions ¶ 9. Philadelphia Police Department policy requires handcuffs to be doubled-locked. ECF 38-3, Supplement to J.A. 80, ¶ 3.

[42] ECF 35-2, J.A. 78, Joint Stipulations Re: body-worn camera footage and Defendants' depositions ¶ 10; ECF 38-3, Supplement to J.A. 90-91, Devlin N.T. at 28–30.

[43] 361 F.3d 772 (3d Cir. 2004).

[44] *Id.* at 774.

[45] *Id.* at 774, 777.

[46] *Id.* at 777.

[47] *Id.*

[48] 427 F.3d 197 (3d Cir. 2005).

[49] *Id.* at 207–08.

[50] *Id.*

[51] *Williams*, 967 F.3d at 260-61.

[52] *Id.*

[53] No. 11-3015, 2012 WL 1622656 (E.D. Pa. May 9, 2012).

[54] *Id.* at *6–7.

[55] *Id.*

[56] *Williams*, 967 F.3d at 260. Mr. Frazier distinguishes *Williams* by arguing it is a qualified immunity case and the Officers here do not assert qualified immunity. We disagree with the attempt to distinguish *Williams*. First, *Kopec*—the case Mr. Frazier hopes we find factually similar and apply here to deny summary judgment—arose in the context of qualified immunity and would thus be out-of-bounds in our analysis if we applied Mr. Frazier's logic. Second, *Williams* is not inapposite because the question of whether the arrestee somehow notified the officers of Ms.

Williams's pain from handcuffing is a material issue relevant to excessive force and the application of qualified immunity. In *Williams*, Judge Rambo denied the officers' motion for summary judgment on qualified immunity grounds. Our Court of Appeals reversed because Judge Rambo did not include in her opinion whether she assumed Ms. Williams notified her arresting officers of her pain, a "plainly material" fact in determining qualified immunity. *Id.* at 260. The court then took its own review of the record and concluded Ms. Williams could not show her arresting officers received notice of her pain in handcuffing her on arrest and could not establish personal involvement of an officer in handcuffing her in a later cuffing incident at City Hall. With regard to the arresting officers receiving notice, our Court of Appeals explained because Ms. Williams did not complain about pain from her handcuffs, a reasonable jury could not conclude the officers received notice of her pain and Judge Rambo erred in denying the officers qualified immunity for failing to loosen the handcuffs. *Id.* at 261. We do not agree *Williams* is distinguishable or inapplicable. And we note the Officers here raise qualified immunity as a defense to the second amended Complaint. ECF 30 at 9. But they chose to not argue qualified immunity in support of summary judgment.

[57] *Gilles*, 427 F.3d at 208.

[58] Again, Mr. Frazier asserts a failure to intervene claim against Officers Devlin, Swart, Powell, Lamaina, and Wilkins for failing to intervene in the alleged unconstitutional use of force in handcuffing. *See* ECF 28 ¶¶ 46–48. Mr. Frazier argues summary judgment should be denied as to Officers Swart and Lamaina only and abandoned failure to intervene claims against Officers Devlin, Powell, and Wilkins. ECF 38 at 13.

[59] *El*, 975 F.3d at 335 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002)).

[60] *Williams*, 967 F.3d at 260 (quoting *Gilles*, 427 F.3d at 208).

[61] *Pinson v. United States*, 826 F. App'x 237, 241 n. 10 (3d Cir. 2020); *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008).

[62] ECF 28 ¶¶ 22, 38. The Officers argue Mr. Frazier does not allege excessive force arising from his transportation to the Police Detention Unit, but the report of his expert Dr. Peters suggests a claim arising from the transportation. *See* ECF 35 at 6. The Officers are incorrect as to the placement in the transport van; Mr. Frazier alleges Officers Devlin, Swart, Powell, and Lamaina used excessive force against Mr. Frazier "including but not limited to placing [Mr. Frazier] in unnecessarily tight handcuffs, ignoring his requests they be loosened and violently throwing him in the rear of the patrol wagon" as unreasonable under the circumstances. ECF 28 ¶ 38. We see no allegation regarding excessive force in transporting Mr. Frazier to the Police Detention Unit; we do, however, read the one allegation to challenge the "throwing" of Mr. Frazier into the back of the transport van. Mr. Frazier's Opposition focuses on being forced into the back of the transport van "backwards." *See e.g.* ECF 38 at 13–14; ECF 38-2, Response to SUMF ¶¶ 15, 16. But again he does not plead this fact. Dr. Peters concluded, among other conclusions, the Officers should have known placing the handcuffed Mr. Frazier in the transport van without being "safely secured by a safety harness" could cause him to be injured. ECF 35-1, J.A. at 22. But Mr. Frazier does not plead excessive force claim for not being secured in a safety harness while being transported to

the Police Detention Unit. We conclude Mr. Frazier alleges excessive force in the handcuffing and "throwing" into the transport van, and nothing else.

[63] He instead attributes his injury including his treatment and surgeries to "excessively tight handcuffs for approximately one-and-a-half hours." ECF 28 ¶ 26. His expert claims, not the sworn facts, about injury in the wagon.

[64] This "transportation" theory is first raised by Mr. Frazier's expert witness. ECF 34-1 at 15 (using the pagination assigned by the CM/ECF docketing system); *see also* ECF 35-1, J.A. at 22. Mr. Frazier then tries to shoehorn this new theory into a claim. The expert of course, cannot plead or create the facts.

[65] ECF 38 at 11.

[66] Mr. Frazier expands on our Court of Appeals's guidance and asks we apply a variety of factors: the severity of the alleged offense, the safety risk to others in the arrest, a possibility of being armed, a possibility of another person intervening on his behalf, efforts to resist arrest, the duration of the Officers' conduct, the number of persons with whom the Officers needed to address to place Mr. Frazier in the transport van, and whether the Officers caused Mr. Frazier unnecessary injury. Third Circuit Model Jury Instruction 4.9. We considered these factors as well. They do not support a finding of excessive force.

[67] *Thomas v. City of Erie*, 236 F. App'x 772, 776-77 (3d Cir. 2007).

[68] *Id.* at 776 (citing *Estate of Smith*, 430 F.3d at 149).

[69] *Id.* (citing *Gilles*, 427 F.3d at 207).

[70] *Id.* (citing *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997) quoting *Graham*, 490 U.S. at 396).

[71] *Graham,* 490 U.S. at 396 (internal citation omitted).

[72] *Shoffler v. City of Wildwood, New Jersey*, No. 17-4859, 2019 WL 4165305, *2–3 (D.N.J. Sept. 3, 2019).

[73] *Id.* at *3.

[74] *Id.* at *10. As an aside, unlike Mr. Frazier's claim (giving him deference at this stage), Mr. Shoffler offered no evidence he complained of tight handcuffs and Judge Hillman granted summary judgment dismissing the handcuffs claim as well. *Id.* at *10–11.

[75] *Id.*

[76] *Id.*

---

[77] *Murphy v. Palmer*, No. 14-6896, 2017 WL 2364195, *13  (D.N.J. May 31, 2017).

[78] *Cf. Piazza v. Lakkis*, No. 11-2130, 2012 WL 2007112, *4 (M.D. Pa. June 5, 2012) (Judge Caputo denying motion to dismiss excessive force claim based on gratuitous force allegations). We appreciate Mr. Frazier's expert now latches onto the "unnecessary" need to put Mr. Frazier in the wagon. ECF 38 at 10–11. But Mr. Frazier did not claim unnecessary force and the bodycam cannot objectively be viewed as showing unnecessary conduct. The bodycam overwhelmingly confirms the Officers attempted to diffuse the agitated Mr. Frazier. He refused.